NICHOLAS H. KOPPES, Appellant, v. MATTHIAS S. KOPPES, Appellee.

**BOUNDARIES:** Establishment—Agreement Between Parties. Mu-
1 tual and executed agreements between adjoining owners as to the location of boundary lines are final, even though subsequent surveys establish inaccuracy in the agreed line.

**APPEAL AND ERROR:** Harmless Error—Reception of Evidence—
2 Motive Inducing Settlement. Allowing evidence to the effect that one party to a boundary line controversy agreed to a certain line "in order to get things settled and get done with the controversy," is harmless.

**PLEADING:** Certainty—Basis for Adjudication. A pleading so un-
3 certain as not to identify the subject matter of the action furnishes no basis for an adjudication.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

MONDAY, JUNE 25, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

The opinion states the case.—*Affirmed.*

*Remley & Remley,* for appellant.

*C. J. Cash* and *C. B. Paul,* for appellee.

WEAVER, J.—The plaintiff and defendant are brothers. Prior to July 23, 1910,

1. BOUNDARIES: establishment: agreement between parties.

they were equal owners in common of the lands hereinafter described, and, being unable to agree upon a basis of division, an action in equity was brought by Matthias S. Koppes to enforce partition as provided by statute. There appears to have been some contest at the hearing upon the question

whether the land was of such uniform value as to justify, the award of an equal number of acres to each party, but the final decree settled the controversy by ordering a partition as follows:

"The plaintiff is given the N. W. ¼ of the S. W. ¼ of Section 10, and the east 46 acres of the N. ½ of the S. E. ¼ and 3 acres in the N. W. corner of the S. E. ¼ of the S. E. ¼ of Section 9, all in Township 85 north, Range 1 west of the 5th P. M., and to the defendant Nicholas H. Koppes is allotted and given the S. W. ¼ of the S. E. ¼ and the west 34 acres of the N. W. ¼ of the S. E. ¼, all in Section 9, Township 85 north, Range 1 west of the 5th P. M."

Assuming, for the present purposes of this statement, that Sections 9 and 10 are of standard form and dimensions, the partition thus made would be as indicated by the solid lines on the following plat:

The present action is at law, and was begun July 7, 1915, nearly five years after the entry of the decree in the partition case. In his petition, the plaintiff alleges the ownership of the property substantially as the same had

been settled in said decree, and alleges that the defendant, instead of observing the line A B as the true line between the east 46 acres of the north half of the southeast quarter of Section 9 set off to him, and the west 34 acres of the described tract set off to plaintiff, asserts right of possession west of said line to A C and has erected his fences accordingly, thereby excluding plaintiff from the possession and enjoyment of the strip or wedge of land included between said lines. On these allegations, judgment is asked restoring plaintiff to the possession of the land, and for damages.

Answering this claim, the defendant pleads the decree of partition between the parties, and alleges that, in said partition proceedings, referees appointed for that purpose marked the dividing line between the lands, as apportioned by visible monuments, in the presence of both plaintiff and defendant, and that the division as thus indicated and marked was mutually accepted by them, and permanent fences were erected by both on the line as thus determined and settled, and that, until the beginning of this action, each of them had continued to occupy and use his respective premises up to the line of division so fixed. Defendant therefore contends that the line as claimed by him has been settled and established, not only by the prior adjudication in the partition proceedings, but also by agreement and acquiescence, as well.

The issues were tried to a jury, which returned a verdict for defendant, and from the judgment entered thereon, the plaintiff appeals.

I. Appellant's counsel devote a considerable part of their brief to an elaborate discussion of the facts in controversy. Many of the points so made are foreclosed by the verdict of the jury, and do not call for consideration at our hands, except as they may bear upon criticisms directed against the trial court's instructions, or upon the further

question whether the verdict has sufficient support in the record.

Both parties lay considerable stress upon the effect of the adjudication in the partition proceedings; but, somewhat unfortunately, except for the final decree in that case, no part of the record therein appears to have been in evidence in the case before us,—at least we do not find it in the abstract. For example, much is said in argument in regard to alleged action by referees appointed by the court to make the partition, and several of the witnesses speak of what they claim to have seen and heard of the action taken by such referees, but no competent record evidence appears to have been offered to show the fact of their appointment, or what they did in that capacity, or the character of their report to the court. True, the decree recites that the "report and finding of the referees are not approved," but further than this, the record of those proceedings is not before us. If, however, we may consider the parol testimony introduced, aided by the statements of fact indulged in by counsel on either side, it may be said to indicate that, at some time prior to the entry of the final decree of partition, the court appointed these referees, one of whom, Mr. Whalen, was a practical surveyor, to view the land and report a plan of partition. This apparently was done, and the referees are said to have reported recommending that all of the west half of the southeast quarter of Section 9 be set off to Nicholas H. Koppes, plaintiff herein, and the remainder of the land held in common be set off to Matthias S. Koppes, but, in view of a difference in the value of the lands so divided, that Nicholas should pay Matthias the sum of $500 in money. We further infer that, on the return of this report into court, objection was made thereto, in so far, at least, as it proposed to adjust the difference in values by a money judgment, and the inequality was adjusted by allowing Matthias an additional number of acres

to be taken from the east side of the N. W. ¼ of the S. E. ¼ of said section, and such is the practical effect of the decree as entered. While it is not shown whether, after the decree was entered, the court ordered the referees to designate and mark the division line between the lands thus apportioned, as required by the statute, Section 4254, Code, 1897, there is parol evidence tending to show that they, or Whalen, the surveyor, did in fact visit the premises both before and after the decree, and did in fact undertake to ascertain the boundary. It is conceded that at this time there was an east and west fence on the north side of the quarter section (S. E. ¼ of Section 9), and the evidence is sufficient to justify the jury in finding that both par!'·· agreed or admitted that this fence was correctly placed. It also appears that the location of the common corner of these two 40-acre tracts on the north (marked F on the plat) was not the subject of any dispute. When the plan of division was changed, the referee returned to the place and under· took to run a new line 12 rods west of the boundary between the two 40's above mentioned. If we were to assume that the two tracts were of standard size and form, and that the new line last mentioned was made parallel to the true boundary between them, it would separate the entire 80 into two parts, containing respectively 46 acres in the east fraction and 34 acres in the west fraction. It appears however, that the line on the north side of these tracts, on which the fence above referred to stands, varies several degrees from a true east and west course, and extends from south of east to north of west. In running the new or last line after the decree of partition, the surveyor either did not notice the irregularity of the line on the north, or, if he did see it, assumed that the boundary between the 40's was at right angles with the north boundary, and going to the common corner F, he measured thence west on the line marked by the fence 12 rods to A, and there turned a

right angle to the southward for the run to C. If the proper line between the 40's is true north and south, as claimed by plaintiff, it would coincide with the line F P on the plat, and the new line required by the decree should have been laid parallel thereto at A B, but the effect of running it at right angles with the north line was to carry it westward to A C, thereby increasing the excess area of land decreed to Matthias.

Were this all the record shows, we should be strongly inclined to hold that a mistake was made below, and that plaintiff was entitled to a verdict; for it is quite clear that defendant holds at least 3 acres of land which the court in the partition case did not intend to give him. But the defendant pleads, in substance, that the new line A C was laid with the consent and agreement of the plaintiff, and accepted by him as the line upon which the partition should be made, and, while it is also true that plaintiff denies such consent or agreement on his part, there is evidence to support the finding against him on that issue. The surveyor Whalen, who was one of the referees, after testifying to his surveys before the decree, further says:

"After the decree, I went down there and set off the 6 acres. I moved the stone at the north 12 rods west.  *  *  * Nick and Matt Koppes agreed that the north line of the land should be considered the boundary and the division should be based on that line. I completed the division by using this line as a base line. Nicholas Koppes was present and raised no objections.  *  *  *  I adopted the old fence line at the request of Matt and Nick."

Such also is in effect the testimony of the defendant. It should also be said that, when the referees recommended the partition of the land along the boundary line between the two 40's (N. E. ¼ S. E. ¼ and N. W. ¼ S. E. ¼ Sec. 9), the surveyor then ran or located such boundary along the course indicated on the dotted line F B, on which a fence

was then standing or was afterward built before the decree was entered; and it will be seen from what we have already said that the last line run and now in dispute is parallel thereto and 12 rods to the west. In the year 1911, the defendant moved the old fence F B to the line A C, and has since occupied the land on the east side of it. For four years, so far as the evidence shows, the plaintiff acquiesced in this situation, or until, in the year 1915, he procured another survey to be made, and brought this action to establish his right to the possession of so much of the land as is contained in the triangle or wedge A C B.

II. Complaint is made of certain rulings upon the introduction of evidence. The defendant, having testified to giving his assent to the running of one of the lines involved in the controversy, was then asked by his counsel, "What induced you to assent to the line running in that direction?" and over plaintiff's objection, was permitted to answer, "In order to get things settled and get done with it." Error is assigned upon this ruling. It would seem entirely proper for a party to a dispute which he alleges has been settled or compromised to testify that his assent thereto was influenced by his desire to have an end to contention. But whether this be true or not true, the substance of the answer given by the witness is so clearly harmless that, even if the trial court erred in admitting it, the error was without prejudice.

2. APPEAL AND ERROR: harmless error: reception of evidence: motive inducing settlement.

III. Numerous instructions asked by the plaintiff, as well as many of the exceptions to instructions given by the court, are to the effect that agreements or concessions made by the parties prior to the entry of the decree of partition are wholly irrelevant, and should not be considered as having any bearing upon the right of each to claim and have the land and all the land given him by the decree. To the extent that it is not competent for either party in this action

to deny the validity of the decree or any part thereof, thè objection is, of course, sound. The decree provided for a division of the land between the parties in the proportion of 46 acres to 34 acres, but it was still entirely competent for plaintiff to agree that the fence on the north marked the true boundary on that side, and that a line drawn at right angles thereto at the point A should be regarded as the line of partition between the tract on the east and the tract on the west. If such was the agreement or consent of the parties (and the jury seems to have so found), then the fact, if it be a fact, that, upon measurement of the land, it is found that one has more and the other less than the full acreage prescribed by the decree, is immaterial. There is evidence to support the verdict, and the court is not authorized to disturb the finding.

IV. We do not overlook the fact that plaintiff claims that defendant has so extended his fence as to take in still another small tract of plaintiff's land, but unfortunately the pleadings wholly fail to describe or locate such tract so as to enable the court to adjudicate the controversy, if any there be with reference to it. The only description given in the petition is as follows: "Commencing 201 feet west of the northeast corner of the southeast quarter of said Section 9–85–1 and running thence in a southwesterly direction to the river." This, it will be seen, does no more than describe a starting point and a line drawn therefrom in a southwesterly direction, nor does the pleading furnish any data from which the court or jury may ascertain the particular lot or parcel of ground which the pleader had in mind. If, however, as seems to be indicated in argument, the land intended to be described is that which lies between F P and F B extended southward, then what we have said with reference to the first described tract is equally applicable here.

3. PLEADING: certainty: basis for adjudication.

We find no reversible error in the record. The issues were for the jury, and the instructions given by the court are not, in our judgment, vulnerable to the appellant's criticisms thereon.

The judgment below is—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.